**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| TINA MILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:26-cv-01031-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| THE BURLINGTON INSURANCE | ) | |
| COMPANY and | ) | |
| THE BLUE NOTE BISTRO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court of plaintiff Tina Miles's ("Miles") motion to remand, ECF No. 9. For the reasons set forth below, the court denies Miles's motion to remand.

## I.  BACKGROUND

This declaratory judgment action arises from a dispute concerning insurance coverage. ECF No. 1-1, Compl. Miles is a resident and citizen of Charleston, South Carolina. Id. ¶ 1. Defendant The Burlington Insurance Company ("Burlington") is an insurance carrier incorporated in Illinois, with its principal place of business in Connecticut. Id. ¶ 2. Defendant The Blue Note, LLC ("Blue Note") was a South Carolina limited liability company that operated a restaurant and bar in North Charleston. Id. ¶¶ 3, 7.

Burlington issued Blue Note a commercial insurance policy, Policy No. 625B002593 (the "Policy"), containing coverage parts for both commercial general liability and liquor liability. Id. ¶¶ 17–18. The Policy was effective from August 21, 2021 to August 21, 2022. Id. ¶ 19.

1

On or about May 23, 2022, Miles was injured in a shooting that occurred within Blue Note's premises.  Id. ¶ 7.  An armed guest discharged a firearm into a crowd, causing a surge towards the building's rear exits.  Id. ¶ 10.  Unfortunately, Blue Note's exits were locked, and patrons were unable to escape safely.  Id. ¶ 11.  Miles slipped and fell on a slick floor while caught in the surge of patrons seeking to escape the line of fire, and then she sustained a gunshot wound.  Id. ¶ 12.

Miles filed suit against Blue Note in state court on March 17, 2023, asserting claims for injuries she suffered as a result of the shooting (the "underlying action").  See id. ¶¶ 19, 25; Miles v. The Blue Note Bistro, LLC et al., 2023-CP-10-01322 (Charleston Cnty. Ct. C.P. March 17, 2023).  Blue Note failed to respond to the complaint in the underlying action.  Id. ¶ 23.  Burlington denied coverage to Blue Note for Miles's claims, citing the Policy's "assault and battery exception" that bars coverage for injuries occurring on the premises that arose wholly or in part from an actual or attempted assault, battery, or physical altercation.  Id. ¶ 24.  Consequently, the Charleston County Court of Common Pleas entered a default judgment of $295,311.92 against Blue Note in the underlying action.  Id. ¶¶ 19–20; see ECF No. 1-1 at 7–13.

Also pending before this court is Burlington's identical declaratory judgment action filed on February 11, 2026 (the "first-filed coverage action").  See The Burlington Insurance Company v. The Blue Note Bistro, LLC et al., Case No. 2:26-cv-00586-DCN.  Like Miles in the instant case, Burlington's first-filed coverage action seeks a declaration of the parties' rights, duties, and obligations under the Policy concerning coverage for the claims and default judgment against Blue Note in the underlying action.

2

Miles filed this action (the "second-filed coverage action") in South Carolina state court on February 12, 2026 after declining service of Burlington's first-filed coverage action on February 11, 2026. ECF No. 1-1, Compl; Miles v. The Burlington Insurance Company et al., 2026-CP-10-0777 (Charleston Cnty. Ct. C.P. Feb. 12, 2026). She asserts a single cause of action for declaratory relief. Compl. ¶¶ 26–27. On March 10, 2026, Burlington removed the second-filed coverage action to this court pursuant to 28 U.S.C. § 1332. ECF No. 1 ¶ 4.

Miles filed a motion to remand the second-filed coverage action to state court on April 6, 2026. ECF No. 8. Burlington responded in opposition April 30, 2026, ECF No. 12, to which Miles replied on May 7, 2026, ECF No. 13. The court held a hearing on the motion on June 15, 2026. ECF No. 18. As such, the motion is fully briefed and now ripe for the court's review.

## II.  STANDARD

Federal courts are of constitutionally limited jurisdiction. "The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper," In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006), and doubts regarding the propriety of removal are to be resolved in favor of retained state court jurisdiction, Baxley v. Advance Auto Parts, Inc., 2011 WL 586072 at *1 (D.S.C. Feb. 9, 2011) (citing Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). Because removal raises significant federalism concerns, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a). Original jurisdiction exists where a claim arises from federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizens of different states, see 28 U.S.C. § 1332.

### III.   DISCUSSION

Miles moves to remand the second-filed coverage action to state court. ECF No. 9. First, she argues that remand is required pursuant to 28 U.S.C. § 1441(b)(2) because Blue Note is a citizen of South Carolina, triggering the "forum defendant rule." Id. at 2. Second, she contends that Blue Note should not be realigned as a plaintiff to establish complete diversity of citizenship among the parties. Id. 2–3. Finally, she asserts that the court should decline to exercise jurisdiction even if the court determines that realignment of the parties is proper. Id. at 3–5. The court takes each argument in turn.

#### A.  The Forum Defendant Rule

In her motion to remand, Miles argues that Burlington's removal of the second-filed coverage action was "improper on its face" under the forum defendant rule of 28 U.S.C. § 1441(b)(2). ECF No. 9 at 2. She asserts that the case could not be properly removed to federal court because "Blue Note is a South Carolina LLC and was served on February 17, 2026, three weeks before removal." Id. In opposition, Burlington contends that the forum defendant rule does not prevent removal of this case because Blue Note should be realigned as a plaintiff, creating complete diversity of citizenship among the

parties. ECF No. 12 at 9–11. There is no dispute among the parties concerning improper joinder, time of service, or whether Blue Note's consent to removal was required. See id.; ECF No. 9 at 2.

The forum defendant rule provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Diversity jurisdiction serves in part to grant a "citizen of one state access to an unbiased court to protect him from parochialism if he is forced into litigation in another state in which he is a stranger and of which his opponent is a citizen." Ziady v. Curley, 396 F.2d 873, 875 (4th Cir. 1968) (cleaned up). The forum defendant rule "reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state." Bell v. Georgia-Pac. Wood Prods. LLC, 2022 WL 1498292, at *2 (D.S.C. May 12, 2022) (quoting Spencer v. U.S. Dist. Court for N. Dist. of Ca., 393 F.3d 867, 870 (9th Cir. 2004)).

At the outset, the second-filed coverage action was removed to federal court in violation of the forum defendant rule. Burlington removed this case from South Carolina state court on March 10, 2026, citing diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 1 ¶ 4. It explicitly stated that Blue Note, a defendant, is a "corporation organized and existing under the laws of the State of South Carolina."[1] Id. ¶ 6. Further,

---

[1] During briefing and hearing of the instant motion, an important issue remains outstanding: of what state is Blue Note a citizen? The analysis offered by both Miles and Burlington is incorrect. See Compl.; ECF Nos. 1, 9, 12. The citizenship of Blue Note, a limited liability company, is based solely by the citizenship of its members. Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).

Burlington's removal is premised on the court realigning Blue Note as a plaintiff for purposes of determining diversity of citizenship. Id. ¶ 7. Thus, prior to considering realignment or the parties' respective interests, the second-filed coverage action was removed from South Carolina state court under diversity jurisdiction despite Blue Note, a presumed South Carolina defendant, being properly joined and served. See ECF No. 1-1. Accordingly, Burlington's removal of the second-filed coverage action was initially improper under 28 U.S.C. § 1441(b)(2). See Bell, 2022 WL 1498292, at *2.

**B. Realignment of the Parties is Warranted**

Miles and Burlington dispute whether Blue Note should be realigned as a plaintiff in the second-filed coverage action to establish complete diversity of citizenship among the parties. See ECF Nos. 9 at 2–3, 12 at 9–13. In its notice of removal, Burlington requested that the court realign Blue Note as a plaintiff with Miles because they have a

---

Determination of Blue Note's citizenship is not governed by the rules for incorporated entities, and thus it is not a citizen of South Carolina merely by virtue of its organization or operation in the State. Jennings v. HCR ManorCare Inc., 901 F. Supp. 2d 649, 653 (D.S.C. 2012) ("It is well established that an LLC is not a corporation and is not considered a citizen of its state of incorporation and principal place of business.") (citing Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 703 (4th Cir. 2010)).

It appears that Blue Note dissolved its limited liability entity in early 2024, and it has not made an appearance in both the underlying action or second-filed coverage action. Blue Note's counsel of record in the first-filed coverage action, Vanisa Siler Brown, is not listed in CM/ECF for the second-filed coverage action. In the first-filed coverage action, Blue Note filed and briefed a motion to dismiss.

Blue Note cannot avoid the default judgment in the underlying action by avoiding court. South Carolina law states that "a limited liability company continues after dissolution only for the purpose of winding up its business," S.C. Code Ann. §§ 33-44-802(a), including for "the dissolved LLC's participation in litigation," Muhler Co., Inc. v. State Farm Fire & Cas. Co., 2022 WL 327005, at *1 (4th Cir. Feb. 3, 2022) (applying South Carolina statutes in dispute concerning a plaintiff who was assigned the rights and claims of a dissolved LLC against the LLC's insurance carrier).

similar interest in the court declaring that the Policy does provide Blue Note coverage for Miles's claims in the underlying action.  ECF No. 1 ¶ 7.  In her motion, Miles concedes that Blue Note "has a theoretical interest in a finding of coverage," but she appears to argue that Burlington's realignment argument is an attempt to improperly manufacture diversity jurisdiction and remain in federal court.  ECF Nos. 9 at 2–3.  In opposition, Burlington points that Miles and Blue Note have explicitly taken an identical position as to the primary issue in controversy in both the first-filed coverage action and the second-filed coverage action.  ECF No. 12 at 9–13.

"Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who [are] defendants."  Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 69 (1941).  Thus, it is the duty of federal courts to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."  Id. (citation omitted) (internal quotation marks omitted).  The Fourth Circuit has adopted the two-step "principal purpose test" to determine whether it is appropriate to realign the parties in a particular lawsuit.  See Jackson v. Home Depot U.S.A., Inc., 880 F.3d 165, 172 (4th Cir. 2018) ("In determining whether to realign the parties, this court employs the 'principal purpose' test[.]").  "First, the court must determine the primary issue in the controversy.  Next, the court should align the parties according to their positions with respect to the primary issue."  Dabeck v. WESCO Int'l, Inc., 702 F. Supp. 3d 431, 438 (D.S.C. 2023) (quoting U.S. Fidelity and Guar. Co. v. A & S Mfg. Co., Inc., 48 F.3d 131, 133 (4th Cir. 1995)).

"The [f]acts forming the basis of realignment must exist at the time of filing the original suit," Texas Pac. Coal & Oil Co. v. Mayfield, 152 F.2d 956, 957 (5th Cir. 1946),

and therefore the court looks to "the state of things at the time of the action brought" to determine subject matter jurisdiction, Mollan v. Torrance, 22 U.S. (9 Wheat). 537, 539 (1824). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." Grupo Dataflux v. Atlas Global Grp, L.P., 541 U.S. 567, 570–71 (2004). The time-of-filing analysis "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." Id. at 571.

There is no dispute that the primary issue in the second-filed coverage action is whether Burlington has a duty to provide coverage under the Policy to Blue Note for Miles's claims in the underlying action. See Compl. ¶ 24 ("Defendant [Burlington] is denying coverage to Defendant Blue Note alleging that an assault and battery exclusion applies."); ECF No. 4, Def. Answer ¶ 24 ("As to the allegations contained in paragraph 24 of the Complaint, it is admitted that [Burlington] has denied coverage for the claims in the Underlying Lawsuit under [the Policy] because the "Assault & Battery" exclusion in the policy bars coverage for such claims.").

The court finds that Miles and Blue Note have the same interest with respect to the primary issue in the second-filed coverage action. "In a declaratory judgment action involving an insurance company's policy coverage, the parties' interests are generally aligned based on whether they believe there is coverage of the damages that might underlie the claims for insurance." Fenwick Commons Homeowners Ass'n, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 2019 WL 1760150, at *3 (D.S.C. Apr. 22, 2019); see also Marsh v. Cincinnati Ins. Co., 2008 WL 4614289, at *2 (D.S.C. Oct. 15, 2008)

8

(realigning defendants with the insured plaintiff in a declaratory judgment action seeking insurance coverage when the defendants had an interest in establishing that the plaintiff was covered by the insurance policy).  In the second-filed coverage action, Miles seeks an affirmative declaration that the Policy provides coverage to Blue Note and that Burlington wrongfully denied coverage under the Policy's "assault and battery exception."  Compl. ¶¶ 24–27.  In the first-filed coverage action, Blue Note takes an identical position to Miles.  See Case No. 2:26-cv-01031-DCN, ECF No 7 at 3–9.  Blue Note states that "liability coverage should not have been denied," "the injuries suffered by Tina Miles did not arise from an assault, battery," and a declaration in favor of Burlington "will be improper."  See id.

The parties' multiple lawsuits and obvious lack of conferral have created needless procedural convolution around a straightforward, identical substantive issue at the heart of the first-filed coverage action and second-filed coverage action: Blue Note is seeking to avoid payment of the $295,311.92 default judgment entered against it in the underlying action, and Miles is entitled to that judgment for her injuries.  See id.; ECF No. 1-1 at 7–13.  Thus, both Miles and Blue Note are aligned as to the primary issue because the court's determination of coverage will conclusively establish who is financially liable for satisfying the default judgment award that preceded the instant case—an insurance carrier or the personal assets of individual members of the Blue Note Bistro, LLC who are now liable for the dissolved entities's outstanding obligation.  See Fenwick, 2019 WL 1760150, at *3; Dabeck, 702 F. Supp. 3d at 438.  As such, it is appropriate to realign Blue Note as a plaintiff in the second-filed coverage action, see Jackson , 880 F.3d at 172, and therefore the court possesses subject matter jurisdiction because there is complete

9

diversity of citizenship among the parties and the amount in controversy exceeds

$75,000.00, see 28 U.S.C. § 1332.

### C.  No Basis to Decline Jurisdiction

Miles argues that the court should decline to exercise jurisdiction over the second-

filed coverage action and remand it to state court.  ECF No. 9 at 3–5.  In opposition,

Burlington asserts that the requisite basis for declining to exercise jurisdiction in a

declaratory judgment action is not present here, citing that the underlying action is neither

pending nor parallel to the second-filed coverage action.  ECF No. 12 at 15–21.

The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction . . . any court of the
> United States, upon the filing of an appropriate pleading, may declare the
> rights and other legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  "[D]istrict courts possess discretion in determining whether and when

to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

satisfies subject matter jurisdictional prerequisites."  Wilton v. Seven Falls Co., 515 U.S.

277, 282 (1995).  In the context of declaratory judgment actions, the Supreme Court

concluded in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494–95 (1942), and later

in Wilton, 515 U.S. at 288, that a district court's substantial discretion permits it to stay or

dismiss an action seeking a declaratory judgment in favor of an ongoing state court case.[2]

When an insurer comes to federal court seeking declaratory relief on coverage

issues while the underlying tort action is pending in state court, the court's exercise of its

---

[2] District courts in this circuit have characterized the court's exercise of discretion
pursuant to Wilton and Brillhart as falling under the broader rubric of "abstention"
doctrine.  See, e.g., U.S. Liability Ins. Co. v. Krawtasky, 2022 WL 888885, at *9 & n.5
(D. Md. Mar. 25, 2022); Nautilus Ins. Co. v. 200 West Cherry Street, LLC, 383 F. Supp.

10

discretion to hear the action should be guided by "federalism, efficiency, and comity." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994). Courts consider four factors in deciding whether to hear a declaratory action in this context:

> (i)   the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (ii)   whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ]
>
> (iii)   whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; . . . [and]
>
> (iv)   whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

Id. at 377 (cleaned up) (internal quotation marks and citations omitted). The Fourth Circuit instructs that these factors should not be treated "as a mechanical checklist[ ]" but should be applied "flexibly in light of the particular circumstances of each case." VRCompliance LLC v. HomeAway, Inc., 715 F.3d 570, 573 (4th Cir. 2013) (internal quotation marks omitted).

It is unclear whether Miles's substantively sparse arguments are premised on the underlying action or the first-filed coverage action, see ECF No. 9 at 4–5, but there is no "ongoing state court case" warranting a stay, dismissal, or remand, see Wilton, 515 U.S. at 288. Miles concedes that the only remaining action in the underlying action is

---

3d 494, 505 (D. Md. 2019). In determining whether abstention is proper, courts often state the inquiry in terms of "declin[ing] jurisdiction." See e.g., 200 West Cherry Street, LLC, 383 F. Supp. 3d at 505 (quoting Myles Lumber Co. v. CAN Fin. Corp., 233 F.3d 821, 823 (4th Cir. 2000)). Accordingly, the court uses the terms "abstain" and "declines jurisdiction" interchangeably. See U.S. Liability Ins. Co., 2022 WL 888885, at *9 n.5.

11

satisfaction of the default judgment.  ECF No. 9 at 5.  Thus, analysis of the Nautilus factors is not needed because there are no present concerns of federalism, efficiency, and comity with respect to the underlying action.  See Huffman v. Pursue, Ltd., 420 U.S. 592, 602–03 (1975) ("[T]he relevant principles of equity, comity, and federalism have little force in the absence of a pending state proceeding.").  As such, the court may properly exercise jurisdiction over the second-filed coverage action.  See Brillhart, 316 U.S. at 494–95; Wilton, 515 U.S. at 288.

Even if the court were to consider the Nautilus factors, each favors the court's exercise of jurisdiction over the second-filed coverage action.  As to the first factor, there is little to suggest that South Carolina has a significant interest in having the second-filed coverage action decided in state court.  See Nautilus, 15 F.3d at 377.  Here, Miles seeks a declaration of whether Burlington is obligated to provide coverage under the Policy to Blue Note; the merits of her claims against Blue Note have been adjudicated through a default judgment in the underlying action.  See Compl.  Though the issue of insurance coverage is governed by South Carolina law, see Williams v. Gov't Emps. Ins., 762 S.E.2d 705, 709 (S.C. 2014), the questions of law in the second-filed coverage action are not so "difficult, complex, or unsettled" to warrant declining to exercise jurisdiction, see Nautilus, 15 F.3d at 378.  In the second-filed coverage action, analysis of the Policy to determine its coverage is "unlikely to break new ground" or address a "novel issue of state interest."  See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998).  Courts in this district have adjudicated identical declaratory judgment actions concerning whether Burlington's general premises liability policy affords coverage for injuries like those sustained by Miles.  See, e.g., White v. Covington Specialty Ins. Co.,

12

2024 WL 4929744, at *4 (D.S.C. Dec. 2, 2024) (analyzing the "Assault, Battery or Other Physical Altercation" exception in Burlington's commercial general liability and liquor liability insurance policies to determine that coverage denial was proper where the injuries occurring on a insured premises were caused by physical altercation and gunshot).

The second factor looks to whether the second-filed coverage action can be more efficiently resolved in South Carolina state court. See Nautilus, 15 F.3d at 377. In evaluating this factor, the focus is on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 491. As analyzed above, the underlying action is not pending and has concluded with the entrance of a default judgment against Blue Note. Importantly, the issue of coverage in the second-filed coverage action is not a question that resolves or affects the liability determination in the underlying action. See Fenwick, 2019 WL 1760150, at *4. Burlington is not a named party in the underlying action, and thus, the claims of all parties of interest with regard to the Policy's coverage can be adjudicated more efficiently in federal court. See Brillhart, 316 U.S. at 491.

The third factor—whether permitting this action to proceed in federal court would result in "unnecessary entanglement" between the federal and state court systems—is not an issue here. See Nautilus, 15 F.3d 377. The Fourth Circuit has found that entanglement is likely where a critical issue raised in federal court "will be addressed in the pending state court action." Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992). Likewise, courts should be hesitant to entertain declaratory judgment actions in which the collateral estoppel will "frustrate the orderly progress of state court proceedings by

13

leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full scale resolution." Id. (citations omitted). The underlying action concerned Blue Note's liability for Miles's injuries and concluded with entry of a default judgment against Blue Note after it failed to appear. See ECF No. 1-1 at 7–13. Separately, the only issue before the court in the second-filed coverage action is whether the Policy provides coverage to Blue Note for Miles's injuries in the underlying action— ostensibly, whether Blue Note may look to the Policy to satisfy the default judgment. See Compl.; ECF No. 9. In the second-filed coverage action, this court is presented with a purely legal question of contract construction that will not require any factual findings or determination of substantive claims that could influence the merits of the underlying action. See Fenwick, 2019 WL 1760150, at *4; Mitcheson, 955 F.2d at 239.

Finally, the fourth factor this court considers is whether the second-filed coverage action is being used as a device for "procedural fencing"—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." Nautilus, 15 F.3d at 377 (cleaned up). In South Carolina, insurers have the right to contest coverage in a declaratory action after a verdict is returned in the underlying tort action. Ex Parte Builders Mut. Ins. Co., 847 S.E.2d 87, 96 (S.C. 2020). As established above, Blue Note has been found liable in the underlying action, and only satisfaction of the default judgment is pending in South Carolina state court. See ECF No. 1-1 at 7–13. Thus, there are no claims for procedural fencing, and the coverage determination in this court is substantively separate and independent of the underlying action. See Fenwick, 2019 WL 1760150, at *4. Burlington removed the second-filed coverage action to federal court after the conclusion of the underlying action, and there is

14

no indication from the record in this case that Burlington has removed this suit with any intention other than to settle the coverage questions arising from the Policy.  See Ex Parte Builders, 847 S.E.2d at 96.

Because all four Nautilus factors weigh in favor of the court exercising jurisdiction over the second-filed coverage action, the court denies Miles's motion to remand.  See Nautilus 15 F.3d at 377.

## IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** Miles' motion to remand.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 30, 2026**
**Charleston, South Carolina**

15